Case No. 16-5073 Animal Legal Defense Fund, Inc. et al. Appellants v. Secretary, United States Department of Agriculture et al. Ms. Wilson for the appellants, Mr. Simon for the appellees Ms. Wilson Thank you, Chief Judge Garland, and may it please the Court, my name is Stephanie Wilson, and I represent the plaintiff appellants, Tracy and Lisa Keel, and the Animal Legal Defense Fund. The key question before this Court is whether the USDA in administering Animal Welfare Act licenses may rubber stamp the renewal application of the applicant when it knows from its own record of citations that the applicant facility is operating in blatant violation of the law. The plain language of the Act, Your Honors, answers this question, wherein 2133 it provides that the Secretary shall issue licenses to dealers and exhibitors upon application, therefore, in such form and manners he may prescribe, and upon payment of such fee established pursuant to 2153, provided that no such license shall be issued. And you think it's clear that the issue includes renewal, right? Yes, Your Honor, because in this provision, Congress directly and completely addressed the scope of the authority for the USDA when engaging in a specific administrative function, licensing. The title of this section is licensing of dealers and exhibitors. Congress chose to impose a specific set of constraints when the USDA exercises that authority. First, the USDA must issue licenses, though it may prescribe the form and manner of them. Second, it must require a form and payment of fees, but no such license shall be issued until the dealer or exhibitor shall have demonstrated that his facilities comply with the standards promulgated under this Act. In this specific statutory directive, Congress defined the USDA's function of licensing entities under the Animal Welfare Act. As the USDA has chosen, in exercise of its authority to prescribe the form and manner of licenses, to issue licenses that expire annually and require renewal, it cannot pick and choose which statutory provisions to comply with. Is the renewal the same as an issue? Your Honor, I... I mean, your argument has to... If we don't agree with you there, we go to Chevron 2, and that's a tougher argument for you to make. I mean, my understanding is that you're... You say you win at Chevron 1 because it's clear that the renewal of a license is part of the issuing of a license. I respectfully disagree, Judge Griffith, because I think the USDA's argument to that point only begs the question of where its authority to renew a license or to create a renewal license comes from in the first place. Nobody disputes, Your Honor, that a renewal license is a form of a license. The only authority that it has to license at all in the Act comes from Section 2133, and the agency itself recognizes this because the form... But is it issuing a license when it renews a license? I think so, Your Honor, and here's why. It's clear? I mean, there's no ambiguity about that? I think the practical reality of what the renewal scheme does actually follows 2133, except for the proviso. Now, the application form itself for renewal, which appears at the appendix at 384, that's in the record of this case, cites to 2133 in the upper right-hand corner of the application and says that no license will be issued unless the applicant has demonstrated compliance. So the renewal scheme here essentially follows 2133, where first it issues a new physical license every year, which you can see at page 386 of the Joint Appendix, and the expiration date is stated on the license itself. Second, it requires an application form, which I just said cites to 2133 of its authority. Third, upon renewal, the USDA requires fees for which Section 2133 and 2153 are its only authority in the statute, and those both say that the agency shall charge fees upon when a license is issued. And fourth, Your Honor, the agency itself recognizes that it has authority to deny a renewal application, particularly in Section 2.1e of its regulations. If USDA determined that compliance could be demonstrated by a certificate, which at one time they did. I mean, they changed their view. But if they determined that compliance could be demonstrated on renewal by an owner certifying that he or she was in compliance, that would be sufficient under the statute, wouldn't it? Again, Judge Griffith, I have to respectfully disagree with that because when the USDA promulgated the certification requirement, and that's in the 95 final rulemaking at 60 FR 893, excuse me, 13894, it said specifically that the certification is not an alternative means of ascertaining compliance or a substitute for inspection. The certification has no effect on the provisions of Regulation 2.3, which has always, since 1967, required that each applicant for a license be demonstrated. No, but what I'm saying, what if they reversed course and went back to the way they had viewed this originally and said you can demonstrate compliance on renewal with a certification? That would be sufficient under the statute, wouldn't it? I have two points in response to that, Your Honor. The first is that they would have to do that through rulemaking, and they would have to provide good policy reasons for why that furthers the statute. Second of all, they would have to address how it is then when, as this case clearly shows, it has already made the determination that the facility is not in compliance when it has cited the statute, where there's a citation of it for violations, including, as we allege in the complaint, leading up to and at the time that it received the renewal application, how that certification could overcome the agency's own determination of noncompliance, which it does in its inspections, in citing the agency, and, as this case also shows, in its own internal assessments of the facility. Here, as we allege in the complaint, the USDA officials here have known since at least 2006 that this facility is in chronic noncompliance with the act and that it cannot and will not comply. So I'm not sure, on the facts of this case, how a certification could overcome that. I wasn't talking about the facts of the case. I was trying to explore the meaning of the statute, the way the regulations work, and what power Congress gave to the USDA on this issue. Well, first it defines, as I said, it defines its licensing power. It defines its licensing function and the three specific requirements that the agency must comply with. And then, separately, it delegates authority. I think this is in 2146, that the agency must use investigations and inspections to determine compliance, the statute, which it does. So, again, Your Honor, I think if you could... That's not the exclusive means of determining compliance, though, inspection, is it? I mean, it's just one. And investigations, Your Honor, that Section 2146 says. So you think the statute precludes the USDA from relying upon certification for compliance? Relying exclusively, Your Honor, where it has its own internal record knowledge, through its routine inspections, through unannounced inspections, through when it has cited the facility. I think so, Your Honor. I think it would have to, if it went through this rulemaking that your question asked about, it would have to provide good reasons for why it could rely solely on certification and why it has changed its mind. Can I ask about this argument? If we're going to make this a Chevron 1 argument about a meeting of 2133, how can it be limited to cases where the agency knows that there's a violation? It doesn't say anything about that in that section. It says, no, if we read it, if we read issue to include renewals, no such license shall be issued until the dealer or exhibitor shall have demonstrated that its facilities comply. So if we read it your way, doesn't that mean that in every one of the, I don't know, 3,000 or whatever number of cases per year in which renewal comes up, that it would be necessary to actually demonstrate, not just certify? Not necessarily, Your Honor, because the way that the agency knows is because it has been inspecting the facility and it has. But it hasn't inspected every facility during the year, right? That's not likely. These are random inspections. They certainly don't cover all. How many zoos are there, 3,000, something like that? It doesn't. So I think it depends. So where there are chronic violators, like the Cricket Hall Zoo. I understand that, but imagine there was no inspection and they don't know anything about that particular zoo the last year. What has to happen under your view? I think, Your Honor, if it has no red flag knowledge in its own record of the facility, I think it could determine that it has demonstrated it complies. How, under your view, this statute, this section governs and it requires a demonstration. It's not a demonstration to have nothing. What's the demonstration? I think, Your Honor, the most obvious way would, of course, the USDA would go out and it would inspect the facility. Yes, so is the implication of accepting your argument that the USDA would have to go out every year or whatever number? How long is the license good for? One year. Every year it would have to go out and inspect all 3,000 facilities? No, not necessarily, Your Honor, because I think that apart from a certification, it could require other evidence. It could look at all the evidence that a facility could provide. It has decided that a mere certification or a mere affidavit is not enough,  that that could be enough. And, Your Honor, the agency decided to issue licenses that expire after one year. So they couldn't have to do that? They could. You agree they could. How about this? How about if they had a regulation that said licenses don't expire ever unless you fail to pay a fee? Then would you have an argument? I think that would be much harder, Your Honor. But whereas here it has issued licenses. But when we say much harder, does that mean you would lose if they did it that way? Or you would think of another argument later? Or what do you think it means? I think it would depend. I mean, is the USDA still requiring fees every year? Yeah, I said unless. So, in other words, it does not expire unless they don't pay the fee. I think so because the charging of it, if it wants to charge fees every year, under 2133, it has to issue licenses. Why is that? Is there any, their only ability to require fees is for issuance? They can't have any kind of maintenance fee or anything else? They can't have a continuing fee required in order to maintain your license? I think, Your Honor, that 2133 and 2153 specify that the USDA's authority to charge a fee depends on its issuance of a license. What is there that indicates that the word issue includes reissue? I think the fact that what the agency actually does, as I noted, actually sends out a physical license. It's a renewal application, cites to 2133 of the statute, and it has... But that goes to the agency's interpretation. I thought your first position was this is absolutely clear on the face of the statute, so it wouldn't matter what the agency actually does. Okay, I understand your question. So, looking at Chevron 1 here for the moment, why do we know that issue includes reissue, which is what's going on here? Because, Your Honor, the question on Chevron is what authority does the agency have? What are its bounds? And what is the scope of what scriptures must it comply with when it exercises that authority? Congress, when enacting 2133, prescribed the entire scope of the agency's licensing authority. So, unless it's acting under 2133 and its authority to prescribe the form and manner of the license, it actually doesn't have authority at all to create what it calls a renewal license. And I'll point out, Your Honor, that the USDA doesn't actually even respond to this argument at all in its brief. What about the past tense use of shall have demonstrated? So, the initial license issuance requires a demonstration. Why can't that sentence be read, no such license shall be issued until the dealer shall have demonstrated, and the dealer did demonstrate that the first time, and not being required to continually demonstrate? Why is that not an ambiguity in this section? Because, Your Honor, I think that the provided that clearly ties it to the shall issue licenses. Furthermore, the overarching purpose of the statute in the statement of purpose in 2131 is to ensure the humane care and treatment of animals. And as I think as this complaint and as the amicus briefs clearly demonstrate, that the USDA's current interpretation that demonstration of compliance is only required on the first license, but not the second or third or tenth, clearly undermines the purpose of the statute to ensure the humane care and treatment of animals. So, I think that it's clear in 2133 that the shall have demonstrated is tied to the issuance of a license, regardless of the form and manner. And I know we're over, but if you were driven to the Chevron 2 question of whether this is reasonable, why is it unreasonable to have a license system where the initial license requires some kind of proof of qualification, the subsequent ones are issued upon a fee, and then if there's a violation, or if they find a violation, they separately go after the violator. Why is that an unreasonable position? Well, our answer to the Chevron 2 question, Your Honor, is that the agency first has to put that in a legislative rule that satisfies state farm. All right. I want you to assume, I'm only asking for the reasonableness, not for the need sort of issue. So, assuming that's their argument, what's unreasonable about it? I think because it's authority, and as I said in Section 2, it would be not reasonable for the reason I said first. I think, you know, its authority is constrained. But if you disagree with that, it's contrary to the statute, as I just stated, for the reasons just explained in this complaint, as I think this case makes clear where you have a chronic violator that just routinely gets new licenses to continue to operate every year. And I think also it goes to the point that Judge Griffith was asking about earlier with the certification, where the USDA will just accept certifications of compliance, which can be demonstrably false, Your Honor. Well, it doesn't seem to me to be an unreasonable scheme to say, okay, because of our limited resources, first time around, we're going to inspect and make certain everything's okay. Now you have your license. Subsequent years, we're going to have you certify that you're in compliance, and then we're going to also have this enforcement mechanism where we're going to drop in on you from time to time. We're going to respond to complaints from citizens to see if, in fact, you are in compliance. What's unreasonable about that interpretation? Because, Your Honor, it allows facilities that are chronic violators to go on year after year. No, it doesn't. People can raise complaints. People can report to them. They drop in occasionally to see you. It doesn't need to be that way. It seems to me you're quarreling with the enforcement mechanism that USDA has chosen. But in terms of the scheme, the regulatory scheme that's set up under this broad language of the statute, it's hard for me to say that that's unreasonable. Well, first of all, Your Honor, we're not quarreling with the enforcement mechanism. Our argument has always been what the statute affirmatively requires at the outset for the license. But even if I do concede your point. Right, and we're all agreed with that. At the outset, it requires a demonstration of compliance. And the question, to me, still the statutory question is, is that what happens on renewal? Is it the same inquiry that you make on the issuing of the initial application? Or is there more leeway given to the agency? To me, that's the interesting statutory question. Even if I must concede that point, Your Honor, this case is not a Chevron case because, as we explained, the regulatory history is all over the place, especially in 1989. I'm sorry, what do you mean it's not a Chevron case? Because no deference is due unless the agency has explained its position in a rulemaking. It can't point to anywhere in the regulatory history where it demonstrates any awareness that it's interpreting the statute. Furthermore, in the 1989 rulemaking, the agency clearly says that 2.3a, a demonstration of compliance on regulations, applies at renewal. So if it's changed its mind about that, it also has to do that in a rulemaking that satisfies State Farm. It simply has not done that there. So even if you get to Step 2, you still must remand this case under Encino-Mortar Parts. Is your position that you cannot demonstrate, assume you're right on issuance, that no matter what, when the agency gives a license, whether it's renewal initially, it's an issuance? So there's a question about demonstration. Can you demonstrate as required by the statute, by certification, if there's no smoking gun? In other words, this case, what's interesting from your side is that there is a smoking gun here. The agency apparently knows this is a noncompliant applicant. But can the agency under the statute reasonably say we'll allow demonstration by certification where there's no apparent issue? I think only, Your Honor, if it explains that position in a rulemaking. I think your question, I think, identifies the narrowness of the ruling in this case, is where the agency has smoking gun evidence. It has red flag evidence, which is, I think, particularly clear on the facts of this case. It cannot, the facility cannot demonstrate compliance. It has already made the determination that the facility is not in compliance. Your Honor, I'm asking, would your arguments be the same if this was a totally clean applicant? There was no smoking gun whatsoever, and you came in and said, what? It was a renewal. There was an issuance of a license pursuant to a renewal request. Assume you're right on issuance. I don't see how they could possibly prevail on that, but that's my view. It's an issuance of a license. But the question is, what do they have to demonstrate? And let's assume you're in here now arguing nothing's wrong. This has been a noteworthy suit keeper and has never had a problem. Would you have some challenge that you can make on that? I think, well, the whole point is, Your Honor, is that Plaintiffs Withstanding can challenge licensing decisions of agencies. I understand, but what I'm asking, what would your challenge be in that case? If that's the only case, if that's the case we're looking at. Right. We would have to argue that the licensing decision in that case was arbitrary and capricious. Because why? Because we thought it was not in compliance. But I agree it would be a much harder case if the USDA's own record of that facility. So it has, you know, when it receives the application, it has before it. A certification that was still clean. Not only that, but also the initial license application, the history of past inspections. And so if there's nothing in that to give the agency any pause as to demonstration of compliance, it can say that the facility has demonstrated compliance. So certification can, as a statutory matter, be enough to demonstrate compliance to justify the issuance of the license, right? I think that was actually the argument that the USDA made in prior litigation. It has flipped its statutory argument. I think it would be, as the questioning has raised, I think I would have a much harder case if that's what the agency was saying. To be clear, the agency currently does not think that certification is the same thing as compliance. So it would have to, if it changed its, it says that in the rulemaking. And as we point out in our reply brief at pages 20 to 21, it's actually said that in subsequent litigation. So I think, you know, to answer your question, Judge, I would want to be able to participate, like any member of the public, participate in notice and comment rulemaking on that point and explain why I don't think a certification is enough. Do parties outside of the regulated parties seek enforcement under the statutory scheme? As far as I know, they can only just submit complaints. There's no citizen suit or anything like that. You can't initiate an enforcement. No, Your Honor. And just as the agency itself recognizes, simply denying the application is not the same thing as a revocation. That was another error below, that a revocation is not the same thing. The consequences are much more severe. They're entirely different from simply denying an application and allowing the license to expire by its own terms. So if there are no further questions, Your Honor, thank you. Thank you. I'll hear from the government. May it please the Court, Jeremy Simon for the appellee. We've talked a lot about what I will call the beginning point in the statute, Section 2133, which talks about the issuance in the first instance of a license. It doesn't say issuance in the first instance. Yes, Your Honor. It says, but my point is the beginning. It says issue licenses. It's ludicrous. I'm speaking only for me, but it's better that you understand my position so you can respond to me if you're so inclined. It seems to me utterly ludicrous to say that merely because you're at a moment of renewal, this isn't an issuance of a license. That's absurd. The person cannot continue in business unless a license is given again under the scheme. You're issuing a license. Well, I'd like to talk about the statute. And your own form understands that. Whether at the beginning or at renewal, they've got to get a license. I don't care whether it's renewal or starting. They've got to get a license. And if they do what they're required to do, you'll issue it. So you're in 2133. The question is, what is 2133 otherwise required? Well, Your Honor. I mean, if your whole argument is issuance doesn't cover this case, it seems to me you should lose in lightning speed. Because that makes no sense. You are issuing a license in this case. There's got to be more to it than that. Well, so there's the other point in this statute is Section 2149, which talks about revocation of a license. And a license under Section 2149 can only be revoked if due process protections are satisfied and if there is actually a determination that the licensee is not in compliance. What does that have to do with whether you're going to issue a license? We're not talking about whether you're going to revoke someone's license. We're talking about whether you're going to issue a license, whether at the beginning or at renewal. Well, the only time the statute contemplates that a license can end is through revocation. The statute ends at the end of its period. But there's nothing, Your Honor, in the statute. Wait, wait. Let me make sure we're together. At the end of the period of my license, it ends unless I renew it, right? It's gone. It ends. I don't have a license. My license says it goes until X period, and then it's over. But that's a regulatory construct. Is that right? That would be correct. Okay. But if you look at the statutory language, the statute just says issuance. It doesn't say renewal. No, no, wait, wait, wait, wait, wait. The license is over, right? If it's not renewed, it ends. It's not about revocation or whether I'm entitled to due process. I didn't renew it, so I don't have it anymore. With all due respect, I believe you're talking about the regulatory scheme. I'm trying to focus on the statutory language. The statute doesn't say that a license, once issued, expires at any time. It doesn't reference renewal. It doesn't say that the issued license has any particular duration. Do you think the statute gives you the authority to say licenses will only extend for one year? Do you think the statute gives the agency the authority to say that? I believe the statute leaves as an ambiguity and allows for the agency. Do you think the statute gives the agency the authority to say one year or a year and a half or whatever? Yes? I believe it does give the agency, to promulgate the regulations, which it has, that the license remains valid and effective unless it expires from non-renewal and for other reasons. But the question is, in terms of the statutory language, it just uses the term issue. It doesn't say anything about the term or duration of the license once issued. No, but it says you have the authority to set the term. So as a statutory matter, you would set the term, pursuant to your authority. The term is one year. If they don't renew after a year or 16 months or whatever you set, they don't have a license, right? Yeah, but you're wearing a Chevron 2 now. No, no, no, no. They don't have a license, right? It expires under the regulatory structure after one year. No, no. Statutorily endorsed regulatory structure. But nothing mandated by the statute. I understand. But you say I have the authority to do this, so it's a statutorily endorsed structure. It ended. They're now standing there with nothing. The only way they can keep going is if you issue them something, right? Well, I think if you look at the ---- Why don't you tell me what demonstrate means? I don't want to use it all the time. The issuance argument makes no sense to me. And the fact that you can revoke someone's license, someone who has a license that hasn't expired, it seems to me is a no-no. It has nothing to do with this case. So what does demonstrate mean and how does it come into play? Well, Your Honor, demonstrate is a statutory term and is not defined further as to how a licensee must demonstrate compliance. So that is up to the agency within its delegated ---- Someone who wants to get a license must demonstrate. So the agency has promulgated a regulatory scheme where if you want a license at the threshold, you need to demonstrate through inspections. Where does it say at the threshold? I'm sorry? Where does it say at the threshold? Well, in section ---- in the regulatory ---- But the statute doesn't say at the threshold, right? No, the statute doesn't. I thought we were talking about the regulations talk about specifically initial licensees. It is 2.3B of the regulation. It says an initial licensee must demonstrate compliance through an inspection before a license will issue. So for very clearly stated, for an initial license, the demonstration of compliance is through inspection. The history of this, remind me of the history. There was an earlier time when the view of the agency was that you could demonstrate compliance by certification. Is that correct? Am I right on that? But then changed its view later to say you could not demonstrate compliance by certification that you were in compliance. Am I remembering the history right or wrong? Well, I believe that there's always been an inspection requirement at the outset. No, I'm talking about the certification of compliance. Well, the certification of compliance has evolved, but I believe ---- It used to be sufficient, and now it's not. Is that the idea? For the initial application. In terms of ---- Initial applications. I'm not sure if the initial ---- My understanding was that for the initial application, there would be an inspection to demonstrate compliance. Always an inspection. But even if you go back to 1967, you still see under the renewal, which I think is Section 2.8 of that regulation, that the license once issued is valid and effective unless it expires by failure to make the payment and submit the report. That is fundamentally still the same scheme that is in play here. And for the agency to ---- What do you mean say make the report? That's the certification that you're in compliance. Is that right? Well, so presently what you have is an application form that has the certification and the report sort of combined in one. Okay. But if the agency were allowed to promulgate a regulation that allowed the agency to deem after a license has been issued, to deem a licensee not in compliance without due process and end their license, then they would be in violation of Section 2.149 of the statute. No, no, wait, wait. No, I'm totally lost. What do you mean deem? We're looking for a new license. That's this case. We have someone who had a license, and now pursuant to your lawful regulatory authority, it's about to expire. So if you want to keep going, you've got to get a new one. And if you do whatever it is we're going to require you to do, then we'll issue it. So you're not revoking anything. You keep going to there. It's not about revocation. It's about what you need to do to get the next license. Right, but that's the administrative scheme that's been put in place. The appellant here is arguing that there needs to be an assessment of whether they are satisfying the standards. And that assessment comes under 2149, the enforcement authority. That's only if you have a license to be revoked. But you still have a license before it's renewed. It's not expired yet. If you're going through the renewal process, your license has not yet expired. So you still have a license. That can't be the basis of your argument, is if you do it quickly enough, we'll avoid the requirements of the statute? No, but I believe your question is assuming that the license has a ---- My question is this. It's simple. The only reason to renew is because you're going to need a new license. So the agency has got to give you this new license. And your form points to 2133. Now, you may have some argument under demonstration and what you can ask for at the point of renewal as distinguished from initial. And I'm trying to figure out what it is. The real problem here is you have someone who is demonstrably in violation of the statute. He's not doing what the regulations in the statute anticipate, and yet you're issuing that operator a license. And the question here is how can you do that? I think we are ---- Your Honor, I would like to answer that question, but I would like to first be very clear that I believe under the statute, under Section 2133, the term issue from a statutory language standpoint does not impose any duration to that license. And I take it your position is that it does not include reissue. Is that right? Correct. Well, yes, issue means that the license comes into force, and the license remains in force. Until? Well, under the statute, it could remain in force indefinitely. It doesn't matter what it could. You're acting pursuant to lawfully adopted regulations, which you said, no, it just doesn't keep going. We stop it at a certain point. Right, but that means we're now in the realm of Chevron 2 because there is an ambiguity at the very least in the statute that allows us to make that regulatory judgment. With respect to demonstration, maybe. Well, and with respect to duration. Yeah, no one's quibbling on the duration. We're all ---- I don't think we are. We all agree you can limit it to a year, two years, whatever. That's not the issue in this case. So we're accepting the fact that it's about to end and you're about to issue something again, and the question is, on what terms? And here's, I'm still trying to figure this out. Let me just give you my question one more time. You're at the point where, except my view, what you're proposing to do is issue again another license to the same person. Under that? Okay. I'm sorry. Except that. Now it says they have to demonstrate something in order to be able to have a license issued. And are you saying even when you know you have a non-complying applicant, you can still issue that non-complying applicant a license at renewal? I'm saying that because under the statutory scheme, there is a separate enforcement mechanism that affords due process protections to someone who is already in existing license. And you know when the due process comes into play? When you have the property interest, which is the license. If a person has the license to be taken away, they get the due process protections. We're talking about getting the license. Does this have something to do with the meaning of whether you know something? So if I – the closest scheme I personally know about, and not in this particular example, is driver's licenses. So you take a driver's test in the beginning for your first license, and when it expires, you normally don't have to take another driver's test. In fact, maybe you never have to take another actual behind-the-wheel test. Even though your driver's license is renewed and you get a new license with a new picture and everything else. And the state's position is that if you are a violator, do bad things, then we'll take it away after you get a hearing before a judge. But in the meanwhile, we're going to keep reissuing. All you have to do is, I don't know, maybe pass an additional eye test, or maybe after some number of years you don't have to do anything other than pay. That's, I take it, your understanding of what this scheme is. Yes, I think that's exactly right. Now, if the police had ticketed the driver for speeding, I don't know, a hundred times, but the driver is contesting this before a court and it hasn't yet been contested, I take it that the Motor Vehicle Administration's position is, well, it's not yet demonstrated that we know, and so they don't prohibit the renewal of the license. They wait until the court decides the case and then take it away. Is that how you understand the scheme? Yes, Your Honor. I think also, as the Eleventh Circuit found in identifying or addressing the exact same issue, that the interpretation that appellants advance of the term issue under Section 2133 is at odds with the Section 2149 provision, which we've discussed. And I think that is yet another reason why issues should be recognized to be, at the very least, an ambiguity that affords the agency the discretion to adopt this purely administrative renewal scheme under Chevron 2. I'm just curious, and then I'll stop. Why are you running from arguing that demonstration is the ambiguity? Why? Because you've never had notice and comment rulemaking to explain it? Because that's obviously there for the agency to go after and say, that's the qualifier. Yeah, assume these are all issuances, but how we do demonstration may vary depending upon the circumstances. No, Your Honor, that's correct. I mean, I'm not running from that. I just think the way this was briefed is that the plaintiff has focused, the appellant, I'm sorry, has focused from the outset on the term issuance. Yeah, but you bought right into it. I mean, that's what I don't understand. You played that game, and you stayed with it, and it seems to me an absurd argument, when demonstration is the fight. Your Honor, if you believe demonstration is the fight, I will absolutely stay. Again, we're not running away from that. I think that it's certainly a reasonable way to proceed to allow the certification to satisfy whatever demonstration requirement there may be. Even when there's a smoking gun. Well, I don't know that the record here shows there's a smoking gun, but I would say that I keep turning back to the point that the agency, that there is an existing licensee, just like in the example Judge Garland brought up, has some interest. It's recognized by Section 2149. Section 2149 went out of four due process protections to a licensee if there was not some interest in that license. But Judge Garland's hypothetical also included a situation where the agency says we're not renewing. We're not issuing anything until this case has been resolved, and then you can come back. As I understood his hypothetical, it was. That was the last part of his hypothetical. My understanding was that, in fact, they do renew upon payment unless there's been a court finding of a violation. Well, he was saying that there's a pending court. My understanding, but I may have misunderstood Judge Garland. You don't want that court to be exempt, right? I think you got that hypothetical correctly. Are there further questions? All right, well, I think no doubt you're out of time, but we'll give you another two minutes. Could you think about the hypothetical I was giving and why this isn't like the driver's license point? My hypothetical, at least intended, perhaps not articulated, was that normally they do renew licenses until there's an actual finding by a court. Why isn't this like that? Well, first, just quickly, I just want to say all of these new schemes are something that would have to come out in a new notice and comment rulemaking and that the agency justifies how it's consistent with the statute. As I understand, this is their scheme. That is, they continue to renew. This is a scheme you're challenging, right? That they continue to renew even though a ticket has been given, or if you think this is not like a traffic ticket, you can tell me why. But there's been a complaint or a finding or whatever form USDA does, but it hasn't yet been adjudicated against them with respect right now and with respect to the current status of their facility. And so under those circumstances, they're not going to do anything until the court or whatever it is resolves their complaint, which I take as ending now. And in that case, they'll revoke, just like a driver's license would be revoked. Okay. I promise I won't get to your driver's license. Our point on Chevron 2 is that this scheme, that it will renew, has never been articulated in a legislative rule. Now, with the driver's licenses, I think the difference is where you have certain violations. My understanding of driver's licenses is if you have a certain number of tickets or if you commit a certain infraction, like driving under the influence, your license will be revoked. And that is the protection for, you know, implementing these driving safety laws. That's actually not really the case in the AWA. As this case demonstrates, you can have these really egregious violators where, you know, no enforcement action comes. But the license ends, and the statute, unlike your driver's license, Congress by statute has said that you must demonstrate these things, you must do these things in order to get your next license. And Congress has struck the balance in that regard, Your Honor. And the agency's policy, Your Honor, to the contrary, simply violates the statute. Your answer on the motor vehicle is that there is an additional qualifier here that apparently the motor vehicle statute doesn't have. You have to demonstrate something for the next issuance, whereas a motor vehicle is just automatically given. That's absolutely correct, Judge Evans. Okay. Other questions? All right. We ask you to reverse the amendment. Thank you. We'll take the matter under submission.
judges: Garland, Griffith, Edwards